Civilian pay; overtime; premium compensation; undercover agent. — On April 25,1980 the court entered the following order:
*756 Before Davis, Judge, Presiding, Nichols and Kashiwa, Judges.
This case involves the recovery of overtime pay and certain deposited monies and comes to us on defendant’s motion for summary judgment, plaintiffs opposition thereto, and plaintiffs request that the matter be set for trial. For reasons asserted below, we grant defendant’s motion for summary judgment while remanding to the trial division for determination of damages of the kinds to which defendant admits liability.
The plaintiff, Larry G. Schroeder, is a former employee of the Department of the Treasury and the Internal Revenue Service. He served from August 1970 through April 1976 as a Special Agent for the Intelligence Division. From April 1972 until December 1974, plaintiff was assigned by the IRS to a criminal investigation in Las Vegas, Nevada.
This investigation was referred to as Operation BERT. Plaintiff was provided with a fictitious identity and was instructed to seek employment in the gambling casinos of Las Vegas. Plaintiff had been instructed by his IRS supervisors that once he obtained employment with a casino, he was to work any and all hours requested by the casino employer. Plaintiff was also instructed to spend as many nonduty hours as possible socializing with his casino superiors and fellow casino employees and to furnish the IRS with any and all information of possible criminal violations of the Internal Revenue Code by such persons.
From approximately April 20, 1972, through January 18, 1975, plaintiff worked at four different Las Vegas casinos. His primary cover job during that period was cashier. Plaintiff provided to his superiors daily reports of his activities and daily reports on all information received by him relating to criminal violations of the Internal Revenue Code. The Intelligence Division of the IRS was apprised of plaintiffs casino'work-schedule and approved it in advance.
In his bi-weekly paychecks from the government, plaintiff was paid a 25 percent premium, pursuant to 5 U.S.C. § 5545(c)(2), for administratively uncontrollable overtime. During the time that he participated in Operation BERT, plaintiff received no additional monies for scheduled overtime, Sunday work, holiday work, or night differential.
*757 Pursuant to instructions from his IRS superiors, plaintiff opened a checking account at a Las Vegas bank in which he deposited all his earnings from the gambling casinos. Also pursuant to instructions, plaintiff signed blank checks drawn on said checking account and furnished them to the IRS for use in withdrawing the monies deposited there by plaintiff.
On December 12, 1975, after his participation in Operation BERT had ended, plaintiff requested additional premium pay for the 22 holidays he had worked during his regularly scheduled tour of duty pursuant to IRS instructions relative to the operation. By memorandum dated March 22, 1976, he also requested additional premium pay for Sundays and nights during the period in question. On or about December 12, 1977, plaintiff received payment in the gross amount of $661.89 for the 22 holidays which the casino employers required him to work during Operation BERT.
In its amended submission on damages, defendant has admitted that plaintiff is entitled to an additional net sum of $9,529.11 in the amounts of $4,298.66 for regularly scheduled overtime, $2,526.25 for night differential, $2,046.09 for Sunday premium pay, and $1,320 for holiday pay, after deduction of the sum of $661.89 which the government had paid to plaintiff for the 22 holidays which his casino employers required him to work. However, plaintiff demands, over and above the amounts agreed to by defendant, an additional $37,006.43 for regularly scheduled overtime, $897.75 for Sunday premium pay, $1,046.02 for night differential, and $203.89 for holiday pay. Thus, plaintiff demands in total damages an amount of $49,345.09 while defendant admits to owing plaintiff only $9,529.11.
In addition to his overtime pay demand, plaintiff also seeks to recover the monies which were paid to him, in his fictitious identity, by the gambling casinos for the work which he performed for them. The money was all deposited by plaintiff in a checking account from which it was withdrawn by the government. Plaintiff claims that he was wrongfully deprived of the use of the monies earned by him and that the United States was unjustly enriched.
*758 After careful consideration of the overtime pay issue and the recovery of the deposited monies, we hold on the legal issues for defendant.
Regarding the overtime pay issue, the parties have confined their arguments to the larger portion of plaintiffs claim, i.e., the regularly scheduled overtime. Plaintiff asserts that he is entitled to $37,006.43, over and above the $4,298.66 to which defendant admits plaintiff is entitled. Plaintiff argues that under 5 U.S.C. § 5542(a) those hours he spent socializing with casino operators and employees after casino work hours should be characterized as "regularly scheduled overtime.” Plaintiff argues that while he was in his undercover capacity he was supervised by his Las Vegas IRS contact, also that all of plaintiffs work at the casinos and in making contacts was controlled by both the national office supervisors and his Las Vegas contact. Under 5 U.S.C. § 5542(a) the rate for regularly schedule overtime is one and one-half times the hourly rate for all hours of work in excess of 40 hours.
In opposition, defendant argues that plaintiffs "socializing” hours do not fall under § 5542(a) but should be characterized as "administratively uncontrollable overtime” under 5 U.S.C. § 5545(c)(2). This section reads, in part:
§5545, Night, standby, irregular, and hazardous duty differential
* sfc * * *
(c) The head of an agency, with the approval of the Civil Service Commission, may provide that—
* * * * *
(2) an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, * * *. Premium pay under this paragraph is determined as an appropriate percentage, not less than 10 per centum nor more than 25 per centum, of such part of the rate of basic pay for the position as does not exceed the minimum rate *759 of basic pay for GS-10, by taking into consideration the frequency and duration of irregular unscheduled overtime duty required in the position. [Emphasis supplied.]
In support of its position that plaintiffs overtime was administratively uncontrollable, defendant submits the affidavit of Anthony C. Mirti, Senior Coordinator, Operations Branch, Criminal Investigation Division, IRS, who assisted in coordinating the operations of Operation BERT. Plaintiff has failed to submit a counteraffidavit. Mr. Mirti states that "while agents were specifically advised to spend any necessary amount of time socializing, the actual amount of time spent socializing by undercover agents was controlled by the agents themselves based on the circumstances presented to them on a given date.”
In further support that plaintiffs socializing hours should be deemed "administratively uncontrollable,” defendant argues that even though plaintiff was instructed by his IRS supervisors to spend as much time socializing with his casino employers as he could, this does not mean it was scheduled. Just because plaintiff was expected and required to work all the overtime possible, does not mean that his IRS supervisors controlled such hours, says defendant. Finally, defendant asserts that, due to the nature of undercover work, plaintiffs overtime hours here could not be controlled by anyone except plaintiff since it would have defeated the very purpose of an undercover operation for the agency to have set in advance a fixed and arbitrary number of overtime hours to be worked. Thus, defendant concludes that since plaintiff has already received his 25 percent premium under 5 U.S.C. § 5545(c)(2) for administratively uncontrollable overtime, defendant is entitled to summary judgment on this issue. We agree.
At the outset, we attach much weight to defendant’s affidavit by Mr. Mirti and to the fact that plaintiff has failed to submit a counteraffidavit. While Mr. Mirti was not a line supervisor over plaintiff, he had been an undercover agent himself from 1971-1973 and had helped coordinate Operation BERT. As such, we conclude that Mr. Mirti was in a position to know how Operation BERT was conducted and what undercover agents were instructed to do.
*760 Mr. Mirti states in his affidavit that "the actual amount of time spent socializing by undercover agents was controlled by the agents themselves based on the circumstances presented to them on a given date.” Plaintiff has failed to file a counteraffidavit. As we stated in Royal Indemnity Co. v. United States, 178 Ct. Cl. 46, 51-52, 371 F.2d 462, 465, cert. denied, 389 U.S. 833 (1967):
The rule for summary judgment, both under our Rule 64 and under Rule 56 of the Federal Rules of Civil Procedure, is that "mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment.” * * * [Emphasis in original.] [Cases omitted.]
Moreover, as we stated in Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F.Supp. 213, 216, cert. denied, 361 U.S. 843 (1959):
* * * In the absence of or inadequateness of counter affidavits by plaintiff, the court may accept as true the statements in defendant’s affidavits. * * * [Cases omitted.]
In addition to the weight we attach to Mr. Mirti’s affidavit, we also agree with defendant’s analysis of the situation. We think that it would be an uncalled for leap in logic to say that just because plaintiff was instructed to work such overtime by the IRS that the latter controlled the amount plaintiff worked. Moreover, if the IRS did schedule and control such overtime, that unbridled freedom necessary to carry out an undercover operation would be negated. Thus, we conclude that those hours spent by plaintiff socializing with casino employees and operators are most properly characterized as "administratively uncontrollable” under 5 U.S.C. § 5545(c)(2) for which plaintiff has already received his 25 percent premium. They are the kind of work hours Congress provided for and had in mind. Judgment as a matter of law on this issue is entered for defendant pursuant to Rule 101(f).
Defendant admits, however, and we so conclude, that plaintiff is entitled to some compensation for regularly scheduled overtime, night differential, Sunday premium *761 pay and holiday pay but only for those work hours ordered by the casino which were over and above plaintiffs casino work week. Consequently, we remand to the trial division for determination of damages on that basis.
In the second portion of his claim, plaintiff asserts that he is entitled to recover funds which were paid to him, in his fictitious identity, by the gambling casinos for the work which he performed for them. The money was all deposited in a checking account from which it was withdrawn by the government. Plaintiff asserts, first, that his duties as a casino cashier were apart from his official duties as an undercover IRS agent; thus, plaintiff argues that he was not forbidden from accepting the salary paid to him by his casino employers. Secondly, plaintiff maintains that if it was an illegal act for him to accept such compensation, it was also illegal for defendant to require him to commit the act. We reject both of plaintiffs arguments.
As to plaintiffs first argument, it is abundantly clear that plaintiffs job with the casinos was inexorably linked to his IRS undercover work. He had been instructed by the IRS to obtain the position as a casino cashier so as to be able to provide to the IRS any information relating to possible violations of the IRC. Clearly, plaintiffs performance as a casino cashier was not a performance rendered apart from his official duties but rather was an integral part of such duties. Thus, we conclude that to allow plaintiff to recover those monies paid to him by the casinos would result in a violation of the conflict of interest statute, 18 U.S.C. §§ 203, 209.
Regarding plaintiffs second argument that if it was illegal for him to accept such compensation it was also illegal for defendant to require him to accept the money, plaintiff misses a very simple point. That is, plaintiff never received such compensation for his own use but as an IRS agent, using a fictitious identity. The funds were never meant for plaintiff in his true identity.
Thus, inasmuch as plaintiff never had a legal right to retain those funds, he cannot now maintain against defendant an action to recoup them. This portion of plaintiffs claim is, therefore, rejected.
*762 Plaintiffs argument that defendant’s motion for summary judgment be denied because it failed to deal with plaintiffs claim for hazardous duty pay is not well-founded. A perusal of plaintiffs pleadings indicates that no claim for hazardous duty pay has ever been presented by plaintiff. Thus, plaintiffs argument provides no basis for denying defendant’s motion.
it is therefore ordered that defendant’s motion for summary judgment on the liability issues is granted and plaintiffs request that the same be set for trial is denied. However, we remand to the trial division for further proceedings in accordance with this order for the calculation of damages of the classes and kinds to which defendant admits liability.
Plaintiffs motion for rehearing was denied June 27,1980.